**STATE of Missouri, Plaintiff–Respondent,**

v.

**Darrell Dean TINDLE, Defendant–Appellant.**

**No. SD 31723.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 25, 2013.

Stuart Huffman, Springfield, MO, for appellant.

Jessica P. Meredith, Jefferson City, MO, for respondent.

**DON E. BURRELL, J.**

Appellant Darrell Dean Tindle ("Defendant") was charged with two counts of first-degree child molestation (*see* section 566.067) and three counts of statutory sodomy (*see* section 566.062) arising from alleged sexual contact he had with two minor children, A.T. and D.A.[1] Following a jury trial, Defendant was found not guilty of child molestation in regard to D.A.[2] The jury found Defendant guilty of three counts relating to A.T.: Count II (statutory sodomy in the first degree) and counts III and IV (statutory sodomy in the second degree).[3] Defendant waived jury sentencing and was sentenced by the trial court to serve concurrent sentences of 20 years for first-degree statutory sodomy and 7 years on each conviction of second-degree statutory sodomy.

In four points relied on, Defendant asserts two claims of trial court error. His first three points all allege, for the following reasons, that the trial court erred in admitting into evidence State's Exhibit No. 3, a DVD video recording of a forensic interview of A.T. conducted at the Child Advocacy Center ("the CAC interview"): 1) it failed to meet "any hearsay exception including" those set forth in sections 491.075 and 492.304[4] in that A.T. was

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2011.

2. The child molestation charge relating to A.T. was dismissed before the case was submitted to the jury.

3. Count II alleged that Defendant had placed his finger in the vagina of A.T. when she was less than fourteen years of age; count III alleged that Defendant placed his finger in the anus of A.T. after she was fourteen years of age; and count IV alleged that Defendant had A.T. touch Defendant's penis after A.T. was fourteen years of age.

4. At the time of trial, section 491.075 provided:

1. A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566, 568 or 573, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings; or

more than fourteen years old at the time of the interview; 2) it did not meet the requirements of Rule 25.16[5] (which governs the admissibility of depositions in criminal cases); and 3) it violated Defendant's constitutional right to confront and cross-examine A.T. Defendant's final point alleges the trial court erred in admitting testimony from a law enforcement officer about his interview of A.T. pursuant to section 491.075 because A.T. was more than fourteen years old at the time of that interview. We deny each point and affirm Defendant's convictions.

## Facts and Procedural Background

Defendant does not challenge the sufficiency of the evidence supporting his convictions. As a result, we set forth only those facts necessary to address Defendant's points on appeal.

At trial, A.T. testified that she was born in February 1995 and that she and her younger sister, D.A., had "always" lived with a couple she considered to be her "stepparents."[6] A.T.'s biological mother ("Mother") was involved in A.T.'s life. Sometimes Mother also lived at the stepparents' residence. When she did not, A.T. and D.A. would visit her at her residence. During the events in question, A.T. was visiting Mother "every other weekend" at a house Mother shared with Defendant. Initially, A.T. liked being with Defendant, and he watched A.T. and D.A. when Mother was at work. A.T. stopped wanting to visit Mother when Defendant "started touching [her] in places [she] wasn't comfortable."

A.T. could not remember when Defendant first touched her in a way that made her uncomfortable, but initially Defendant would put his hand on and under her pants and bra on different occasions. A.T. testified that Defendant "told [her], if [she] told anyone, he would slit [her] throat." Defendant also made her watch a DVD con-

---

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child or vulnerable person unavailable as a witness at the time of the criminal proceeding.

2. Notwithstanding subsection 1 of this section or any provision of law or rule of evidence requiring corroboration of statements, admissions or confessions of the defendant, and notwithstanding any prohibition of hearsay evidence, a statement by a child when under the age of fourteen who is alleged to be victim of an offense under chapter 565, 566, 568 or 573 is sufficient corroboration of a statement, admission or confession regardless of whether or not the child is available to testify regarding the offense.

3. A statement may not be admitted under this section unless the prosecuting attorney makes known to the accused or

the accused's counsel his or her intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the accused or the accused's counsel with a fair opportunity to prepare to meet the statement.

4. Nothing in this section shall be construed to limit the admissibility of statements, admissions or confessions otherwise admissible by law.

(Bold text as stated in original.) Section 492.304 provides predicate conditions for the admission of "the visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568[.]"

5. Unless otherwise indicated, all rule references are to Missouri Court Rules (2012).

6. A.T. testified that the stepparents were "actually kind of [her] cousins." We will use "stepparents" in referring to this couple and "stepmother" in reference to the female family member.

taining "[p]ornography" more than once. When she said she did not want to watch it, Defendant told her that if she told "anybody, [he] [was] going to slit [her] throat." A.T. identified a DVD at trial that, based on its cover, looked like the one Defendant had her watch. A.T. testified that on more than one occasion Defendant put his finger inside her "butt" and her vagina. A.T. was not sure how she remembered it, but she thought she "was about eleven and a half" when Defendant started touching her vagina and anus. A.T. also testified that Defendant made her touch his penis "with his clothes off" on more than one occasion after she had turned fourteen. A.T. was "scared" to tell anyone what had been happening, but one day her stepmother asked her if Defendant "had done anything to [her]" and A.T. "told her." A.T. recalled that she talked to the police when they came over later that same day. She also recalled going to a place and "talk[ing] to a couple of detectives" about what had happened.

Defense counsel's cross-examination of A.T. included questions about what she had told the police officer and about the contents of the CAC interview. A.T. agreed that she did not remember "what [she] said to the officer[.]" A.T. testified that she had not watched the video recording of the CAC interview, and she agreed that she did not remember "any specifics of that interview[.]"[7]

After A.T. testified before the jury, a hearing was held outside the jury's presence on a motion the State had filed during trial to admit statements A.T. made to Springfield Police Officer Robert Baker pursuant to section 491.075 ("the 491 hear-ing"). Officer Baker testified during the 491 hearing that he had interviewed A.T. about Defendant on March 28, 2009, after responding to a report of child sexual abuse. After the interview concluded, Officer Baker prepared a written report of A.T.'s statements. Defense counsel cross-examined the officer about other persons present during the interview, the content of some specific statements made by A.T., and how the officer attributed exact quotations as compared to paraphrases in his report. Other than an objection regarding the timing of the State's motion, the following constituted Defendant's objection and the trial court's ruling:

[Defense Counsel]: As far as the exact items that Officer Baker would be allowed to testify to, I think the purposes of a 491 hearing are those specific statements that the children make. The CAC interview is nice because it's recorded. We actually see and hear exactly what it says. In this particular case, whether he is trying the best that he can or not trying the best that he can, it doesn't change the fact that it's paraphrasing.

You know, I understand they don't have recorders there. I mean, I don't see why they don't take them with them on these calls. But that's neither here nor there. But it's still paraphrasing, Judge.

I think that anything that's a direct quote that he can differentiate as a direct quote, that's something that I think is suitable under the 491 [h]earing statute. Anything else

---

7. In closing argument, defense counsel argued that when A.T. was "asked about or pressed upon the specific instances, she had no knowledge or recollection of any specific instance" thereby raising doubt about the events. Defense counsel also pointed out inconsistencies in A.T.'s trial testimony, the CAC interview and her statements to Officer Baker.

that he has no direct knowledge or memory as far as the exact statement—And even the State, Judge, as he was making his statements about 491, talked about how important it was to do the specific words that he [sic] said. So the State by their own statements are saying that it's important that we only are hearing those words that the officers [sic] were sure is what she said to him. Those are what's [sic] in quotes. Everything else is a paraphrase and not admissible.

[THE COURT]: Well, the Court will find the statements are admissible in that at the time content and circumstances of statements provides sufficient indicia of reliability. And it's up to the jury to determine the credibility and the accuracy of the statements, and not for me to do that at this point.

After proceedings before the jury resumed, the State asked Officer Baker what A.T. told him had happened. Defense counsel stated, "Judge, if I may renew my previous objection." The trial court replied that the objection was shown and overruled. Officer Baker went on to testify that he did not ask A.T. any questions, but that the stepmother told A.T. to tell the officer what had happened. A.T. then told the officer that "for the last year that, while [A.T.] was there alone with [Defendant] while [A.T.'s] mother was at work, that [Defendant] would hold her down on the bed and masturbate." A.T. also report-

ed that Defendant made "her watch porn DVDs" and he "touch[ed] her private parts and that he did put his finger inside her." Officer Baker also said A.T. told him that Defendant told A.T. that Defendant would cut A.T.'s throat "if anyone ever found this out[.]" Officer Baker made a "Child Abuse Hotline" report, but he did not personally conduct a full interview of A.T. because he knew that a detective would need to be assigned for a follow-up investigation.

Defense counsel cross-examined the officer about certain details A.T. had reported, including that it had been going on for a year, not longer. He elicited from Officer Baker that A.T. did not specify the body part that was penetrated and that Defendant's threat "was a one-time deal."

Matthew Brown, a CAC forensic interviewer at the time, testified that he interviewed A.T. and D.A. on April 16, 2009.[8] When a DVD recording of D.A.'s interview was offered into evidence as State's Exhibit 2, defense counsel stated, "Subject to previous objection, Your Honor."[9] The objection was overruled and the exhibit was admitted. After this, Mr. Brown described how his interview of A.T. had occurred. When the CAC interview was offered into evidence, Defense counsel again stated, "Subject to previous objection, Your Honor." The trial court overruled the objection, and the State requested permission to publish it to the jury. Defense counsel replied, "No objection." The CAC interview was then played for the jury.

8. The docket entries reflect that before trial, the State filed a motion under section 491.075 to admit statements that D.A. made to Mr. Brown at the CAC and the motion was granted after a hearing. A transcript of that hearing was not deposited with the court, but the record does not reflect that a similar motion was filed regarding the CAC interview. "The hearing provided for in Section 491.075 is not required, however, in the absence of an objection to the statements when they are offered."

*State v. Schuster*, 92 S.W.3d 816, 820 (Mo. App. S.D.2003).

9. The referenced prior objection to this occurred after the 491 hearing when Officer Baker began testifying to the jury as to what A.T. told him and defense counsel stated, "Judge, if I may renew my previous objection."

Male and female anatomical drawings marked during the course of the CAC interview were also admitted into evidence upon "[n]o objection" by defense counsel.

The CAC interview was deposited with the court, and we have reviewed it. At the beginning of the recording, A.T. told Mr. Brown that she was fourteen years old. She said that at first, Defendant touched her as though he were playing. A.T. said that Defendant would "stick his fingers everywhere." A.T. said that Defendant "ha[d] been doing it since [A.T.] was 11." A.T. said Defendant also made her watch "porn" on a disc. A.T. said that she was fourteen when Defendant touched her inside her vagina. She said that Defendant said he would "slice [her] throat" if she told anyone. A.T. said that Defendant made her touch him, and she circled the depiction of a penis on the male anatomical drawing shown to her. She said that this touching happened "like the day after [her] birthday," specifically referring to her fourteenth birthday.

Defendant testified in his own defense. He denied touching A.T.'s vagina or anus, and he denied making A.T. touch his penis. Defendant testified that he did not touch either A.T. or D.A. "in a sexual manner[.]" Defendant testified that A.T. made up or was lying about her allegations against him.

After both sides rested, the trial court dismissed Count V (which charged Defendant with molesting A.T. when she was less than fourteen years old between February 18, 2009 and March 28, 2009). The trial court found that "based upon the felony information and the evidence, it is impossible for that count to be proven because [A.T.] was not less than 14."

Defendant's contention No. 11 in his motion for new trial stated:

The trial court erred in sustaining the State's motion pursuant to 491.075 RSMO. states [sic] to the [trial c]ourt that the State has failed to show that the time, content, and circumstance to [sic] the statements made by the children to each witness, and the two taped interviews from the [CAC] provides sufficient indicia of reliability to be deemed admissible. The admission of these exhibits (State's exhibit 2 and 3) violated Defendant's right to a fair trial, due process and the right of confrontation[.]

The trial court overruled the motion and sentenced Defendant as set out above. This appeal timely followed.

## Applicable Principles of Review

We review the trial court's admission of evidence for an abuse of discretion. *State v. Freeman*, 269 S.W.3d 422, 426 (Mo. banc 2008). Such "discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005). We presume a discretionary ruling to be correct, and the burden is on the appellant to overcome that presumption. *State v. Hatch*, 54 S.W.3d 623, 628 (Mo.App. W.D.2001).

■■■ "In order to preserve an evidentiary question for appellate review, an objection needs to be made at the first opportunity." *State v. Manes*, 961 S.W.2d 889, 890 (Mo.App. S.D.1998). The objection must also be "sufficiently clear and definite so that the court will understand the reason for the objection." *Schuster*, 92 S.W.3d at 821. "In the absence of a timely and proper objection, the trial court has no opportunity to take corrective action." *Id.* at 820. For that reason, "[a]n appellant cannot broaden the scope of his objections on appeal beyond that made in the trial court. A point is preserved for appellate review only if it is based on the same

theory presented at trial." *State v. Johnson*, 207 S.W.3d 24, 43 (Mo. banc 2006) (internal citations omitted).[10] Finally, if the conviction resulted from a jury trial, the objection must also have been preserved by including it in a motion for new trial. *See State v. Green*, 307 S.W.3d 197, 201 (Mo.App. S.D.2010); *see also* Rule 29.11(d).

## Analysis

### *Points I, II, & III—The CAC Interview*

■ As earlier noted, Defendant's first three points all contend the trial court erred in admitting the CAC interview on the grounds of: inadmissible hearsay, improper bolstering, improper use of a deposition under Rule 25.16, and the violation of Defendant's constitutional right "to confront and cross[-]examine" A.T. The State asserts that Defendant waived appellate review of his claims by "not object[ing at trial] on the grounds he now raises for the first time on appeal." With one exception, we agree with the State's assertion.

Defendant's objection to the admission of the CAC interview was, "Subject to previous objection, Your Honor." As best we can glean from the chronology of Defendant's previous objections, the reference is to defense counsel's objection during Officer Baker's 491 hearing testimony that A.T.'s statements to the officer were not reliable because they had not been audio or video recorded. The trial court overruled that objection, finding that the statements were admissible because the circumstances surrounding the statements "provide[d] sufficient indicia of reliability." Based on that response, the trial court apparently took Defendant's objection as a challenge to the indicia of reliability required for the admission of a child's hearsay statements under section 491.075. The record does not contain any objection by Defendant to its admission on the grounds of improper bolstering, improper use of a deposition, or violation of the confrontation clause. As a result, those contentions were not preserved for our review; Defendant cannot bypass the trial court and assert alternative grounds for

---

**10.** Unpreserved errors may be reviewed for plain error only, requiring the reviewing court "to find that manifest injustice or miscarriage of justice has resulted from the trial court error." *State v. Clayton*, 995 S.W.2d 468, 474 (Mo. banc 1999); Rule 30.20. "An appellate court has complete discretion on whether to review an unpreserved matter for possible plain error." *State v. Marshall*, 131 S.W.3d 375, 377 (Mo.App. E.D.2004). Defendant has not requested plain error review, and we are unable to provide it because Defendant does not assert the prejudice necessary for such error. "[A]ppellate courts do not function as an advocate for any party to an appeal[,]" *State v. Simmons*, 364 S.W.3d 741, 749 (Mo.App. S.D.2012), and "plain error cannot serve as a basis for granting [an a]ppellant a new trial ... unless the error was 'outcome determinative.'" *State v. Shaffer*, 251 S.W.3d 356, 358 (Mo.App. S.D.2008) (quoting *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002)). The factual statement presented in Defendant's brief does not describe A.T.'s specific statements in the CAC interview, much less identify in his argument the particular statements deemed so erroneous in their admission that they were outcome determinative. The argument portions of Defendant's brief do not present specific facts regarding the CAC interview, except to suggest that A.T. was not under oath during the interview. For purposes of the hearsay argument, Defendant contends that the CAC interview "was not cumulative trial testimony of the alleged victim, A.T." and that it "presented additional testimonial evidence not contained in A.T.'s trial testimony[.]" But in support of his alternative argument that the testimony was improper bolstering, Defendant describes the CAC interview along with A.T.'s statements to Officer Barker as being "essentially the same testimony in multiple forms" such that it "was duplicative and cumulative and therefore was improper bolstering."

the first time on appeal. *See Johnson,* 207 S.W.3d at 43.

Even Defendant's hearsay objection has significantly shifted from what was argued to the trial court. Defendant now contends that the CAC interview was

> not subject to any hearsay exception including and specifically the exceptions created pursuant to [section] 492.304 or [section] 491.075 regarding a child under the age of 14 at the time of the interview because the interviewee, A.T., was over 14 years of age at the time of the interview and the admission of said video was highly prejudicial to [Defendant's] defense.

The State candidly concedes that the CAC interview was "erroneously admitted under the hearsay exception in [section] 491.075." And we see no basis to admit this evidence under section 492.304. Mr. Brown testified before the CAC interview was offered into evidence that A.T. was fourteen at the time of that interview. Despite that testimony, no objection based on A.T.'s age was brought to the attention of the trial court before either the CAC interview or A.T.'s statements to Officer Baker were admitted into evidence.

Hearsay is defined as an "out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Sutherland,* 939 S.W.2d 373, 376 (Mo. banc 1997). "Hearsay is generally inadmissible unless it falls within a recognized exception to the rule." *State v. Steele,* 314 S.W.3d 845, 850 (Mo.App. W.D.2010). But even if the trial court had overruled what would have been a well-taken objection that A.T.'s hearsay statements should not have been admitted because she was fourteen years old at the time they were made, Defendant would not have been entitled to relief.

If hearsay testimony is erroneously admitted, the admission does not require reversal unless the defendant was prejudiced as a result. *State v. Harrison,* 213 S.W.3d 58, 76 (Mo.App. S.D.2006). "A defendant is not prejudiced by hearsay testimony that is merely cumulative of evidence already before the trial court, especially if that evidence was presented by another witness who was subject to cross-examination." *State v. Atkeson,* 255 S.W.3d 8, 11 (Mo.App. S.D.2008). Indeed, "prejudice will not be found from the admission of hearsay testimony where the declarant was also a witness at trial, testified on the same matter, and was subject to cross-examination because the primary defects in hearsay testimony are alleviated." *Steele,* 314 S.W.3d at 850.

Here, A.T. testified at trial, and she was subjected to cross-examination. Part of the CAC interview was cumulative of A.T.'s trial testimony. To the extent that the statements were not cumulative, A.T. was cross-examined about the inconsistencies. Although Defendant now complains that the CAC interview was admitted after A.T. had left the witness stand and was released, Defendant had cross-examined A.T. about the CAC interview before it was offered, and Defendant made no attempt to recall A.T. as a witness after it was published to the jury. Defendant suffered no prejudice from the admission of the CAC interview, and to the extent that the CAC interview was inconsistent with A.T.'s trial testimony, Defendant benefited from the ability to attack A.T.'s credibility based on those inconsistencies. Points I, II, and III are denied.

*Point IV—Statements to Officer Baker*

Defendant claims the trial court erred in admitting the testimony of Officer Baker "based on the hearsay exception created by [section] 491.075" because A.T. "was

over the age of 14 at the time of the interview." Defendant's fourth point also asserts that the probative value of this testimony was outweighed by its "highly prejudicial" effect.

As previously noted, Officer Baker's testimony was admitted following a hearing on the State's motion to admit it under section 491.075. Like the CAC interview, the testimony was not admissible under that statute because A.T. was fourteen years old when Officer Baker interviewed her. Also like the CAC interview, Defendant did not object to the admission of the testimony on that basis. As earlier noted, the objection Defendant offered to the trial court was that the statements were not reliable because they were not mechanically recorded. As with his first three points, Defendant's claim on appeal cannot be broadened beyond the theory of his trial objection. *Johnson,* 207 S.W.3d at 43. Moreover, even if Defendant's age objection had been properly preserved, the same prejudice analysis we applied to the admission of the CAC interview would bar relief. A.T.'s statements to Officer Baker were similar to the CAC interview in that they were only partially cumulative of her trial testimony. To the extent that they were not, A.T. was subjected to cross-examination about them. Defendant was not prejudiced by their admission. *See Steele,* 314 S.W.3d at 850.

Point V is also denied, and the judgment of conviction and sentence is affirmed.

JEFFREY W. BATES, MARY W. SHEFFIELD, JJ., concur.